DAVID, Justice,
dissenting.
It is undisputed that the evidence presented at Thang’s trial was sufficient to show that he was intoxicated. And I can agree with my colleagues that reasonable inferences drawn from the evidence could lead a reasonable fact-finder to conclude that Thang drove his vehicle to the gas station — and, presumably, drove on a public street in doing so. For that matter, I concur in the majority’s interpretation of Moore. But because I believe the relevant criminal statute requires the State to prove more than just this, and because I feel it failed to do so, I cannot join the majority.
Thang was charged under Indiana Code § 7.1-5-l-3(a), which makes it a class B *1261 misdemeanor to “be in a public place ... in a state of intoxication caused by the person’s use of alcohol ... if the person: (1) endangers the person’s life; [or] (2) endangers the life of another person.”[1] And the majority concludes:
In the present case, the undisputed evidence established the sudden presence of the defendant and his vehicle at a gas station, his intoxication, his possession of the car keys, and the absence of any other person, thus necessitating removal of the car by towing. From these facts, it is a reasonable inference that the defendant had arrived at the gas station by driving his automobile on the public streets while intoxicated, thereby endangering his or another person’s life.
Thang, slip op. at 6 (emphasis added). I can agree with all but the last seven words. But those last seven words establish an evidentiary presumption that we have specifically rejected in a closely related — and frequently overlapping — context.
Indiana Code § 9-30-5-2 provides that “a person who operates a vehicle while intoxicated” has committed the offense of Operating While Intoxicated, a class C misdemeanor. Ind.Code § 9-30-5-2(a). However, the offense is a class A misdemeanor “if the person operates a vehicle in a manner that endangers a person.” Ind. Code § 9-30-5-2(b). As the Court of Appeals first recognized, the intent of this two-part statute — the product of a 2001 amendment — “was to remove the ‘endangerment’ requirement from the general definition of intoxication and create the new offense of Class C misdemeanor OWI without an endangerment requirement.” Vanderlinden v. State, 918 N.E.2d 642, 645 (Ind.Ct.App.2009), trans. denied; see also Sesay v. State, 5 N.E.3d 478, 484 (Ind.Ct.App.2014). “By definition the statute requires more than intoxication to prove endangerment.” Vanderlinden, 918 N.E.2d at 645.[2]
Another panel of the Court of Appeals, in Outlaw v. State, looked at this same question and reached the same conclusion. 918 N.E.2d 379 (Ind.Ct.App.2009). To prove the elements required for class A misdemeanor OWI, “[t]he element of endangerment can be established by evidence showing that the defendant’s condition or operating manner could have endangered any person, including the public, the police, or the defendant.” Id. at 381. “Endangerment does not require that a person other than the defendant be in the path of the defendant’s vehicle or in the same area to obtain a conviction,” but “[b]y definition, the current statute requires more than intoxication to prove endangerment.” Id. at 381-82 (citing Vanderlinden, 918 N.E.2d at 642). Outlaw then expressly notes that prior case law — equating intoxication with endangerment — had been abrogated by the current statutory scheme. Id. at 382.
Thus, we hold that the State was required to submit proof of “endangerment” that went beyond mere intoxication in order for the defendant to be convicted of operating while intoxicated, as a Class A misdemeanor. Here, the *1262 traffic stop of Outlaw’s vehicle was based on a non-illuminated license plate rather than erratic or unlawful driving, and no evidence other than the intoxication suggests that Outlaw was operating his motor vehicle in a manner that would endanger himself, his three passengers, or any other person. Indeed, the State concedes that “there is no evidence that [Outlaw] operated his vehicle in an unsafe manner ...”
Id. at 382 (internal footnote omitted).
We then granted transfer and adopted the Court of Appeals opinion in Outlaw, concluding that the Court of Appeals was correct in rejecting the State’s argument “that evidence of ‘intoxication’ should be sufficient to prove ‘endangerment’ ” under the current version of the OWI statutes. Outlaw v. State, 929 N.E.2d 196, 196 (Ind.2010). Thus, the rule that the State must show something additional — on top of intoxicated driving — to prove endangerment in the case of an OWI conviction is part of this Court’s very recent jurisprudence.
I am not certain that we can reconcile that with the Court’s holding today. Because it appears, at least somewhat, that the majority has implicitly adopted the very presumption that we rejected in Outlaw: it permits the evidence of Thang’s intoxication, coupled with circumstantial evidence of driving, to also satisfy the proof requirement for the element of endangerment. In other words, it seems as though the majority holds that for purposes of the public intoxication statute, drunk driving is endangerment in and of itself — even though that would not be true if Thang were actually charged with drunk driving.
The explanation is that the General Assembly’s intent in modifying the public intoxication statute was different than the objectives it had in mind when amending the OWI statutes. I cannot agree.
The General Assembly modified the OWI statutes by separating them into two offenses, adding a specific element of endangerment to the higher level of charge and indicating that, at the lower level, a person could drive while intoxicated without endangering others. And when it amended the public intoxication statute in 2012 it likewise added a specific element of endangerment. If anything, I believe this reflects the same intent for both statutory provisions: to make the fact of endangerment a separate and distinct element from intoxication, that the State must prove beyond a reasonable doubt.
This intent is also reflected in the General Assembly’s 2001 amendment of the definition of “intoxication,” which previously said that a person was intoxicated when he or she was under the influence of alcohol “so that there is an impaired condition of thought and action and the loss of normal control of a person’s faculties to an extent that endangers a person.” Ind. Code § 9-13-2-86 (1991) (emphasis added). But after 2001, the endangerment portion of the definition of intoxication was removed. See Ind.Code § 9-13-2-86 (Supp.2001); Act of May 9, 2001, P.L. 175-2001, § 1, 2001 Ind. Acts 1131; see also Ind.Code § 35-46-9-2 (Supp.2013).
So before 2001, intoxication presumed— or, rather, required — endangerment. Af-terwards, by statutory definition the two terms became separate and distinct. Under today’s holding, however, they are one and the same again — but only in the precise factual context (drunk driving) which caused the General Assembly to separate them in the first place.
The alternative take-away from today’s opinion is that if the endangerment element remains an independent element to be proven beyond a reasonable doubt, i.e., that intoxicated driving is not per se en *1263 dangerment, then the majority sustains Thang’s conviction on its belief that the fact-finder could draw a reasonable inference from Thang’s intoxicated appearance at the gas station, to his act of driving, to a distinct endangerment element. However, I do not believe there is any evidence in the record to sustain this leap of faith.
It is at most a reasonable inference that Thang drove to the gas station drunk, as there is no direct evidence of his doing so. Certainly he arrived at the gas station somehow, and with the keys in his possession and no other apparent driver, a jury could probably infer that Thang was the vehicle’s driver.
But by the same token there certainly is no evidence in the record as to the manner in which he drove: Did he drive safely and obedient to the traffic laws? Did he swerve across the fog line? Did he nearly drive into a telephone pole? Was the road upon which he drove winding or dangerous? Did he nearly strike a pedestrian or bicyclist? Did he speed or act erratically? Were there even any other cars on the road? If Thang had to do something apart from simply drive drunk to endanger himself or another, then what did he do? We simply do not know, because there was no evidence introduced at trial that would tend to show any of those things.[3]
The decision today effectively vitiates the endangerment element from the public intoxication statute under these circumstances, as the State need no longer present any evidence beyond the fact of the defendant’s intoxicated driving of a vehicle. Thang v. State will be the guidepost that affirms all such convictions on sufficiency review.
Today’s result also muddies the judicial water and will create unusual possibilities for the State, defendants, judges, and juries. By way of example, imagine a hypothetical police officer pulling over a driver on an Indiana highway for a non-driving related reason, such as a tail light being out. See Outlaw, 918 N.E.2d at 380 (defendant stopped for improperly illuminated license plate). And on approaching, the officer discovers that the driver is intoxicated. But the driver had committed no driving errors. He or she had not swerved, changed lanes without signaling, and was travelling below the speed limit. Under the OWI statutes, the State could charge that driver with class C misdemeanor OWI but not class A misdemeanor OWI, because the proof of intoxication while driving is not sufficient to show en *1264 dangerment and the General Assembly has clearly reserved that higher level of offense for circumstances involving additional conduct beyond intoxication. But based on the majority’s decision today, the State could charge that driver with class B misdemeanor public intoxication and use the evidence of intoxication to also prove endangerment. In essence, today’s holding also vitiates the class C misdemeanor OWI statute under these facts as the State can always seek a higher penalty by using a different criminal statute.
Or in another example, imagine if Thang had walked out of the gas station, gotten in his car, and driven away before being arrested. He drove without violating any apparent traffic regulations or laws (other than being intoxicated), but because there might be some gray area as to that question, the State charges Thang with public intoxication as a class B misdemeanor and OWI as both a class C and class A misdemeanor. The fact of Thang’s intoxication could be used to prove endangerment for the public intoxication charge, but could not be used to prove endangerment for the class A misdemeanor OWI. I pity the judge who must explain that to a jury in his or her final instructions, and I feel for the jurors who must sort out the distinction.
Even under the facts today, the blurriness is apparent. The State could have charged Thang with class C misdemeanor OWI, using the circumstantial evidence of his driving and the direct evidence of his intoxication as proof. And it probably should have done so, as Thang likely committed that offense. It could not, however, have succeeded in convicting Thang of class A misdemeanor OWI as there is no evidence of his manner of driving that would prove the element of endangerment. But today the majority affirms Thang’s conviction for class B misdemeanor public intoxication, using the very same circumstantial evidence of driving that would have sustained the class C misdemeanor OWI, and then inferring from it sufficient evidence to prove the endangerment in a way that would be impermissible under the class A misdemeanor OWI. It simply does not pass the common-sense test.
This cannot be what the General Assembly intended in amending the public intoxication statute — which it did after Outlaw’s determination of the relationship between “intoxication” and “endangerment” — and as such should not be how we interpret or apply it. See Bailey v. State, 979 N.E.2d 133, 141 (Ind.2012) (“Certainly, had the General Assembly disapproved of our approach ... it could have done so. In the absence of such a change, we think it fair to infer a persuasive degree of legislative acquiescence with respect to our approach.”); Sales v. State, 723 N.E.2d 416, 420 (Ind.2000) (“The legislature is presumed to have intended the language used in the statute to be applied logically and not to bring about an unjust or absurd result.”); Sanders v. State, 466 N.E.2d 424, 428 (Ind.1984) (“[SJtatutes relating to the same general subject matter are in pan materia and should be construed together so as to produce a harmonious statutory scheme.”). The better way forward, I think, would be to use the same approach for both statutes: evidence of intoxication, standing alone, cannot also serve as the evidence that the defendant charged with public intoxication endangered himself or herself, or another person.[4]
*1265 This is not how we have chosen to interpret our OWI statutes and I see no reason to interpret identical terms in the public intoxication statute — particularly in this factual context — any differently. The majority opinion does not give us clear guidance going forward. And because I believe the State failed to show that Thang endangered himself or another person— beyond its at-best circumstantial showing of intoxicated driving — I therefore vote to reverse the trial court.
RUCKER, J., joins.

. I agree with the majority’s decision to summarily affirm the Court of Appeals with respect to its analysis of Ind.Code § 7.1 — 5—1— 3(a)(4).

. In Vanderlinden, the Court of Appeals rejected the State's argument that the defendant’s intoxication alone was sufficient to show endangerment, Vanderlinden, 918 N.E.2d at 645, but nevertheless affirmed the defendant’s conviction for class A misdemean- or OWI because the defendant had been speeding, id. at 646 (declining to determine precise extent of speeding required to show endangerment, but concluding "that driving fifty-one miles per hour in a thirty-five mile per hour zone is sufficient”).

. It is true that in the context of an OWI, ”[t]he element of endangerment can be established by evidence showing that the defendant’s condition or operating manner could have endangered any person, including the public, the police, or the defendant.” Outlaw, 918 N.E.2d at 381 (emphasis added); Thang v. State, 2 N.E.3d 702, 705 n. 3 (Ind.Ct.App.2013). And reasonable persons might say that ”[t]he argument could be made that driving a vehicle while intoxicated always endangers someone.” Vanderlinden, 918 N.E.2d at 645 (quoting Wells v. State, 848 N.E.2d 1133, 1147 (Ind.Ct.App.2006), trans. denied, cert, denied ). But that could be said about any number of activities, and that is not how the General Assembly has delineated the elements of this crime. The public intoxication statute does not speak in terms of "might” endanger or “could have” endangered — it says "endangers.” See Sesay, 5 N.E.3d at 485 ("[Sjpeculation regarding things that could happen in the future is not sufficient to prove the present crime of public intoxication.”). "If it is sufficient to speculate about all the various things that might befall a person,” then the General Assembly’s addition of the endangerment prongs to the public intoxication statute would have no meaning "because there is virtually no scenario in which a person in a public place would not be found guilty of public intoxication for simply being intoxicated.” Id. at 486. "Such a construction would stretch the statute to an absurdity.” Id.

. This, in fact, is what the Court of Appeals seems to already be doing. See Sesay v. State, 5 N.E.3d 478, 484-85 (Ind.Ct.App.2014) (applying rationale from Vanderlinden and Outlaw to Ind.Code § 7.1 — 5—1—3(a)(1)). "Here, too, something more than mere intoxication is now required to prove a person has committed the crime of public intoxication. The *1265 State conceded as much at oral argument.” Id. at 485; see also id. at 487 (Bradford, J., concurring in result). ("Intoxication alone is insufficient to sustain a finding of endangerment.”). The majority’s decision today thus overrules Sesay without mentioning it.