## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 22 2016, 8:29 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Megan Shipley
Marion County Public Defender Agency
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Gregory F. Zoeller
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Calvin Castillo,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff*

July 22, 2016

Court of Appeals Case No.
49A02-1511-CR-1783

Appeal from the Marion Superior Court

The Honorable Amy J. Barbar, Magistrate

Trial Court Cause No.
49G02-1501-F5-581

**Baker, Judge.**

[1] Calvin Castillo appeals his convictions for Leaving the Scene of an Accident Resulting in Death,[1] a Level 5 felony, and Operating a Vehicle While Intoxicated,[2] a Class A misdemeanor. Finding no error, we affirm.

## Facts

[2] In the early morning hours of January 3, 2015, Castillo decided to leave his Indianapolis home following an argument with his wife. He took two pills of the anti-anxiety drug clonazepam and drove to a liquor store, where he bought a sixteen-ounce beer and drank it in the parking lot. Castillo then tried to get in touch with a friend, but after failing to do so, he decided to drive back home.

[3] At around 3 a.m., Castillo crashed his car into a telephone pole at the corner of Washington Street and Colorado Avenue. Judy Ollis heard the crash from inside her home and ran outside to help. She found Castillo in his car and a man, later identified as Joseph McKenney, lying face down in her yard. Castillo was injured, but conscious, and several people were trying to help him get out of his car.

[4] Ollis retrieved her cell phone from inside her home, called 911, and returned to Castillo's car. Ollis asked Castillo if he was okay and told him that the police were on their way. Castillo told Ollis that he was fine. McKenney, however,

---

[1] Ind. Code § 9-26-1-1.1. This section was substantially amended effective July 1, 2015. Here, we refer to the statute as it existed on the date that Castillo committed the offense.

[2] Ind. Code § 9-30-5-2.

was unresponsive. Ollis went inside her home to get McKenney a blanket. When she returned, Castillo was gone, and she could not see him on either Washington or Colorado. Police and paramedics arrived shortly thereafter and McKenney was transported to the hospital. He later died as a result of blunt force trauma injuries.

[5] Officers later found Castillo walking in an alley a few blocks away from the scene of the crash. Castillo, who appeared intoxicated, told the officers that he had been in an accident. He was then transported to a hospital, where he tested positive for alcohol and clonazepam.

[6] On January 6, 2015, the State charged Castillo with level 5 felony leaving the scene of an accident resulting in death and class A misdemeanor operating a vehicle while intoxicated. Trial was held on August 27, 2015. At the close of evidence, Castillo moved for a directed verdict on the operating while intoxicated charge and the trial court denied the motion. A jury then found Castillo guilty as charged. The trial court sentenced Castillo to five years, with three years executed on Community Corrections and two years suspended to probation, for leaving the scene of an accident resulting in death, and one year suspended to probation for operating a vehicle while intoxicated. The trial court ordered the sentences to run consecutively, resulting in a total sentence of three years in Community Corrections and three years suspended to probation. Castillo now appeals.

# Discussion and Decision

[7] Castillo makes two arguments on appeal. He first argues that the trial court committed fundamental error by erroneously instructing the jury on the crime of leaving the scene of an accident resulting in death, and he asks us to remand the case for a new trial on this charge. He also argues that the State presented insufficient evidence from which a reasonable jury could find him guilty of class A misdemeanor operating a vehicle while intoxicated, and he asks us to vacate his conviction for this count.

# I.  Jury Instruction

[8] Castillo first takes issue with an instruction given to the jury. The instruction defines the crime of leaving the scene of an accident resulting in death and provides, in part:

> The driver of a vehicle who should reasonably have anticipated that his operation of the vehicle resulted in injury to a person is under a duty imposed by law to do the following:
>
> Immediately stop the vehicle at the scene of the accident or as close to the accident as possible in a manner that does not obstruct traffic more than is necessary; *and*
>
> Immediately return to and/or remain at the scene of the accident until the driver . . . gives the driver's name and address and the registration number of the vehicle [and] exhibits the driver's license . . . [to] any person involved in the accident . . . .

Appellant's App. p. 62 (emphasis added).

While this language is a correct statement of the law as it existed on the date of trial, it is not a correct statement of the law as it existed on the date that Castillo committed the crime. This is important given the "well established rule of our criminal jurisprudence that the law which applies is that law in effect at the time the crime is committed." *Williams v. State*, 706 N.E.2d 149, 160 n.7 (Ind. 1999). While the current version requires a driver to *both* stop his vehicle and return to, or remain at, the scene of the accident, the statute that existed on January 3, 2015, seemed to require Castillo to do only one of those things. It provided that:

> The operator of a motor vehicle involved in an accident shall do the following:
>
> (1)    *Either*:
>
>      (A)    immediately stop the operator's motor vehicle . . . *or*
>
>      (B)    remain at the scene of the accident until the operator . . . [g]ives the operator's name and address and the registration number of the motor vehicle [and] [e]xhibits the operator's driver's license to any person involved in the accident . . . .

Ind. Code § 9-26-1-1.1 (2015), *amended by* P.L. 188-2015, § 99 (emphases added).

Jury instructions are meant "to inform the jury of the law applicable to the facts without misleading the jury and to enable it to comprehend the case clearly and

arrive at a just, fair, and correct verdict." *Isom v. State*, 31 N.E.3d 469, 484 (Ind. 2015) (quotations omitted). An instruction is erroneous when, taken as a whole, it misstates the law or otherwise misleads the jury. *Id.* at 484-85. Because Castillo failed to object to this instruction, we will only reverse if we are persuaded that the error here was fundamental—meaning that the erroneous instruction was so prejudicial as to make a fair trial impossible. *Rosales v. State*, 23 N.E.3d 8, 11 (Ind. 2015).

[11] Castillo argues that this error was indeed fundamental, in that it allowed the jury to convict him of something that was not illegal at the time he did it. He maintains that, under this instruction, the jury could have found him guilty of leaving the scene of an accident resulting in death if it found that he did not stop his vehicle *and* remain at, or return to, the scene. Failing to do both of these things was not a crime on January 3, 2015, as the law in effect on that date only required Castillo to do one of these things. Appellant's Br. p. 15.

[12] However, while the portion of the instruction relied on by Castillo was erroneous, we note that we must take the instruction as a whole when considering its likely effect on a jury. *Isom*, 31 N.E.3d at 484. Here, Castillo has been convicted of leaving the scene of an accident *resulting in death*. Following an accident resulting in death, in addition to stopping one's vehicle and remaining at the scene, the current statute provides:

> If the accident results in the injury or death of another person, the operator shall . . .

(A)    provide reasonable assistance to each person injured in or entrapped by the accident, as directed by a law enforcement officer, medical personnel, or a 911 telephone operator; and

(B)    as soon as possible after the accident, immediately give notice of the accident . . . [to] [t]he local police department, . . . [t]he office of the county sheriff or the nearest state police post, . . . [or] [a] 911 telephone operator.

I.C. § 9-26-1-1.1. Unlike the language that Castillo complains of, this language appeared in the statute in substantially the same form as it existed on the date of the accident. I.C. § 9-26-1-1.1 (2015).

[13]    Thus, because Castillo was in an accident involving the death of an individual, he was required to contact law enforcement, inform them of the accident, and provide the victim with reasonable assistance if instructed to do so. Were the jury to find that he failed to do this, he would be guilty of the crime of leaving the scene of an accident resulting in death as that crime was defined on January 3, 2015. *Id.*

[14]    A review of the whole jury instruction reveals that the jury was required to find that Castillo failed to contact law enforcement and, as a result, failed to provide McKenney with any assistance that may have been requested. The instruction, in pertinent part, provides:

    Before you may convict the defendant, the State must have proved each of the following beyond a reasonable doubt:

The defendant knowingly did not immediately return to and/or remain at the scene of the accident . . . [and] did not determine the need for and did not render reasonable assistance to the person injured or entrapped in the accident as directed by law enforcement officer, medical personnel, or 911 telephone operator and, did not as soon as possible after the accident, immediately give notice of the accident, or ensure that another person gives notice of the accident by the quickest means of communication to the local police department, the county sheriff or nearest police post, or a 911 telephone operator . . . .

Appellant's App. p. 63-64.

[15] According to this instruction, before it could find Castillo guilty, the jury was required to find that he failed to report the accident to law enforcement and, therefore, failed to render any assistance that he may have been asked to give. The jury could not, as Castillo asserts, have found him guilty simply because he failed to stop *and* remain at the scene, which was not a crime on the date that he committed the act. Rather, the instruction required the jury to find that Castillo committed an act that would have been sufficient to constitute the crime of leaving the scene of an accident resulting in death as that crime existed on January 3, 2015. I.C. § 9-26-1-1.1 (2015). Accordingly, we find that he has suffered no prejudice.

## II. Sufficiency of the Evidence

[16] Castillo next argues that the State presented insufficient evidence to support his conviction for class A misdemeanor operating a vehicle while intoxicated.

When an appellant challenges the sufficiency of the evidence in support of a conviction, this Court considers only the probative evidence and the reasonable inferences that support the conviction. *Gray v. State*, 957 N.E.2d 171, 174 (Ind. 2011). We will affirm the conviction unless no reasonable jury could have found the elements of the crime beyond a reasonable doubt. *Id.*

[17] The class A misdemeanor version of the charge is an enhanced version that requires the State to prove, in addition to intoxication, that Castillo "operate[d] a vehicle in a manner that endanger[ed] a person." I.C. § 9-30-5-2(b). Castillo argues that the State presented no evidence as to the manner in which he operated his vehicle, and he believes that his conviction should be reduced to the class C misdemeanor version of the offense. He notes that no one witnessed the accident and there was no evidence that he was speeding, driving without his headlights on, driving in the wrong lane, or otherwise driving erratically. Appellant's Br. p. 24-25. He also points out the crash investigator could not determine who was at fault for the accident. *Id.* at 24. Accordingly, he argues that the accident could have been caused by McKenney suddenly stepping out into the street and that "there was no evidence to show that one scenario was more likely than the other." *Id.* at 25.

[18] Castillo relies on two previous decisions of this Court where we found the evidence insufficient to support a conviction for the class A misdemeanor version of this offense. In *Outlaw v. State*, we held that the State could not rely solely on evidence that a defendant was intoxicated to prove that he must have been driving in a dangerous manner. 918 N.E.2d 379, 381 (Ind. Ct. App.

2009). We noted that, because the element of endangerment enhances the underlying offense of operating a vehicle while intoxicated, "[b]y definition, the . . . statute requires more than intoxication to prove endangerment." *Id.* at 382. Accordingly, we found the evidence insufficient to support a conviction for the class A misdemeanor offense where the State's only evidence in support of endangerment was the fact that the defendant was intoxicated. *Id*. at 381. Similarly, in *Dorsett v. State*, we found evidence that an officer found the defendant intoxicated inside a parked car was insufficient to prove that the defendant had driven in a manner that endangered a person. 921 N.E.2d 529, 533 (Ind. Ct. App. 2010).

[19] These cases differ from Castillo's in that, here, there was an accident. Castillo's car was found crashed into a telephone pole and McKenney was found nearby in a yard. From this evidence, the jury could infer that Castillo lost control of his vehicle and crashed into McKenney before hitting the telephone pole. This would certainly constitute operating a vehicle in a manner that endangers another. Although Castillo hypothesizes that McKenney may have walked into the street in a manner that failed to allow Castillo enough time to stop, our Supreme Court has instructed us that, "in reviewing the sufficiency of the evidence supporting a conviction[,] it is not necessary for that evidence to overcome every conceivable hypothesis of innocence." *Lock v. State*, 971 N.E.2d 71, 78 (Ind. 2012). Accordingly, the jury could reasonably conclude

that, because most people in McKenney's position would not choose to suddenly jump into the street, it is highly unlikely that that's what he did.[3]

[20] The judgment of the trial court is affirmed.

May, J., concurs.
Brown, J., concurs with a separate opinion.

---

[3] As an aside, we note that other provisions of our criminal code allow the State to punish those who drive while intoxicated and kill another without requiring proof that the individual drove in a dangerous manner. Indiana Code section 9-30-5-5 provides that "[a] person who causes the death of another person when operating a vehicle . . . while intoxicated[,] commits a Level 5 felony." Convictions for this offense and leaving the scene of an accident resulting in death, even if they arise from an incident in which only one individual was killed, would not violate the prohibition on double jeopardy. *McElroy v. State*, 864 N.E.2d 392 (Ind. Ct. App. 2007).

| Calvin Castillo, | Court of Appeals Case No. |
| *Appellant-Defendant*, | 49A02-1511-CR-1783 |
| v. | |
| State of Indiana, | |
| *Appellee-Plaintiff*. | |

**Brown, Judge, concurring**.

I concur but write separately to clarify the statute defining the crime of leaving the scene of an accident resulting in death as it existed at the time of the incident. While the majority discusses portions of the statute in its analysis, I find it helpful to consider the statute as a whole and analyze how its subsections work together. At the time of the accident, Ind. Code § 9-26-1-1.1 provided:

> (a) The operator of a motor vehicle involved in an accident shall do the following:
>
> (1) Either:

(A) immediately stop the operator's motor vehicle:

    (i) at the scene of the accident; or

    (ii) as close to the accident as possible in a manner that does not obstruct traffic more than is necessary; or

(B) remain at the scene of the accident until the operator does the following:

    (i) Gives the operator's name and address and the registration number of the motor vehicle the operator was driving to any person involved in the accident.

    (ii) Exhibits the operator's driver's license to any person involved in the accident or occupant of or any person attending to any vehicle involved in the accident.

(2) If the accident results in the injury or death of another person, the operator shall, in addition to the requirements of subdivision (1):

(A) provide reasonable assistance to each person injured in or entrapped by the accident, as directed by a law enforcement officer, medical personnel, or a 911 telephone operator; and

(B) immediately give notice of the accident by the quickest means of communication to one (1) of the following:

    (i) The local police department, if the accident occurs within a municipality.

> (ii) The office of the county sheriff or the nearest state police post, if the accident occurs outside a municipality.

*  *  *  *  *

> (b) An operator of a motor vehicle who knowingly or intentionally fails to comply with subsection (a) commits leaving the scene of an accident, a Class B misdemeanor. However, the offense is:

*  *  *  *  *

> (3) a Level 5 felony if the accident results in the death of another person . . . .

Ind. Code § 9-26-1-1.1 (eff. Jan. 1, 2015) (subsequently amended by Pub. L. No. 188-2015, § 99 (eff. July 1, 2015)).

[2] It is clear this section of the statute was divided into two subsections — subsection (a) set forth the duties of a motor vehicle operator involved in an accident and subsection (b) defined the crime of leaving the scene of an accident.

[3] In defining the crime, subsection (b) referenced the duties of an operator under subsection (a) and provided that an operator who knowingly or intentionally failed to comply with those duties committed the crime. Subsection (b) also elevated the offense if the accident resulted in bodily injury, serious bodily injury, or death, and subsection (b)(3) provided the offense was a level 5 felony if the accident resulted in the death of another person.

[4] Turning to the duties of a motor vehicle operator under subsection (a), all drivers involved in an accident were required to comply with Ind. Code § 9-26-1-1.1(a)(1), that is to immediately stop the vehicle or remain at the scene until the driver gave his information or license to any others involved in the accident.[4] In addition to these duties, motor vehicle operators who were involved in an accident resulting in the injury or death of another person were required to comply with Ind. Code § 9-26-1-1.1(a)(2), which required an operator to provide reasonable assistance to injured or entrapped persons as directed and to immediately give notice of the accident to law enforcement. *See* Ind. Code § 9-26-1-1.1(a)(2) (eff. Jan. 1, 2015) ("If the accident results in the injury or death of another person, the operator shall, *in addition to the requirements of subdivision (1)*: . . . .") (emphasis added).[5]

[5] With this framework in mind, it is important to note that the State may establish that an operator committed the crime of leaving the scene of an accident as a level 5 felony under Ind. Code § 9-26-1-1.1 (eff. Jan. 1, 2015) by proving that the operator was involved in an accident, that the accident resulted in the death of another person, and that the operator knowingly or intentionally failed to comply with *any* of the operator's duties described in subsection (a) of

---

[4] The current version of the statute, effective July 1, 2015, requires an operator involved in an accident to both immediately stop the vehicle *and* remain at the scene as required. *See* Ind. Code § 9-26-1-1.1(a)(1)-(2) (eff. July 1, 2015).

[5] These duties are contained in subsection (a)(3) of the current version of the statute. *See* Ind. Code § 9-26-1-1.1(a)(3) (eff. July 1, 2015).

the statute—the duties in subsection (a)(1) *or* the duties in subsection (a)(2). For instance, the State could prove that the operator failed to comply with the operator's duties under subsection (a)(1) related to stopping or remaining at the scene.[6] Alternatively, the State could prove the operator failed to comply with the operator's duties described in subsection (a)(2) related to providing reasonable assistance as directed and notifying law enforcement.[7] This is why, in this case, Castillo has suffered no prejudice. While the jury may not have been correctly instructed regarding Castillo's duties under subsection (a)(1), the jury nevertheless found, as the majority observes, that Castillo was involved in an accident resulting in the death of another person and knowingly or intentionally failed to comply with subsection (a)(2) of the statute, and this constituted the offense of leaving the scene of an accident as a level 5 felony.

[6] I concur in the majority's opinion.

---

[6] These duties are found under subsections (a)(1) and (a)(2) of current version of the statute. *See* Ind. Code § 9-26-1-1.1(a)(1)-(2) (eff. July 1, 2015).

[7] These duties are found under subsection (a)(3) of the current version of the statute. See Ind. Code § 9-26-1-1.1(a)(3) (eff. July 1, 2015).